UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL LYNN BRADFORD-ALLEN,

        Plaintiff,                      CIVIL ACTION NO. 11-13596

        vs.                             DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF                 MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:**     This Court recommends that Defendant's unopposed motion for summary judgment (docket no. 20) be GRANTED and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL BACKGROUND**

On April 18, 2008 Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 1999. (TR 17, 125-28). The application was denied and Plaintiff filed a timely request for a *de novo* hearing. On April 28, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Andrew G. Sloss. (TR 40-60). Vocational Expert (VE) Melody L. Henry also appeared and testified at the hearing. In a June 28, 2010 decision the ALJ found that Plaintiff had failed to provide medical evidence to substantiate the existence of a severe impairment prior to September 30, 1999, the date last insured. Consequently, at step two of the five step sequential process, the ALJ concluded that Plaintiff was not under a disability as defined under the Social Security Act from January 1, 1999, the alleged onset date, through the date last insured of

September 30, 1999. The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review.

On October 21, 2011, the Court entered a Scheduling Order setting November 21, 2011 as the deadline for filing Plaintiff's motion for summary judgment. (Docket no. 9). Plaintiff did not file a motion for summary judgment or make any attempt to seek an extension of time. As a consequence the Court ordered Plaintiff to show cause in writing on or before December 30, 2011 why she failed to comply with the Scheduling Order. (Docket no. 11). On January 27, 2012 Plaintiff's counsel filed a motion to withdraw and at the same time requested additional time for Plaintiff to obtain new counsel and submit her motion for summary judgment. (Docket nos. 14, 15). In response to counsel's request, the Court entered a Final Scheduling Order setting May 31, 2012 as the date for filing Plaintiff's motion for summary judgment. (Docket nos. 16, 18). Once again Plaintiff did not file a motion for summary judgment or make any attempt to seek an extension of time. On June 29, 2012 the Commissioner filed its motion for summary judgment. (Docket no. 20). Plaintiff did not file a response. The Commissioner now moves, unopposed, for summary judgment seeking affirmance of the Commissioner's final decision.

### III. TESTIMONY OF PLAINTIFF AND PLAINTIFF'S MOTHER, VOCATIONAL ANALYSIS, AND MEDICAL EVIDENCE

#### A. Testimony of Plaintiff and Plaintiff's Mother

Plaintiff was thirty-four years old on her alleged disability onset date. (TR 43). She testified that she obtained an Associates Degree from college with a minor in Corrections. (TR 44).

Plaintiff's mother testified that Plaintiff had her gallbladder removed in January 1998, after which she continued to experience stomach pain and constant vomiting, sometimes lasting the entire day. (TR 47). She testified that to this day Plaintiff continues to vomit frequently and has to lie

down constantly. (Tr 48). Plaintiff's mother testified that Plaintiff had migraines in September 1999 on an almost daily basis that she would treat by resting in a darkened room. She also testified that Plaintiff had an anxiety disorder, daily panic attacks that could last up to three hours, fibromyalgia with chronic pain disorder, mitral valve prolapse, and an atrial septal aneurysm that was repaired. (TR 52-56). Her mother reported that Plaintiff had flu-like symptoms and fatigue that caused her to sleep for twelve-hour stretches prior to her heart surgery. (TR 53).

Plaintiff's mother testified that she lives with Plaintiff in order to assist her with bathing, dressing, grooming, housekeeping, and child care responsibilities. (TR 48-50). She stated that it is her opinion that Plaintiff would not have been able to work from January 1998 through September 1999. (TR 50).

**B.    Vocational Analysis**

The VE completed a Vocational Analysis that classified Plaintiff's past employment as a medical assistant as light and semi-skilled, past employment as an investigator as very heavy and semi-skilled, and past employment as a corrections officer as light and skilled work. (TR 219).

**C.    Medical Record**

The evidence of record pertaining to Plaintiff's medical condition prior to the date last insured is sparse. The record shows that Plaintiff was diagnosed with chronic pancreatitis with doubtful incomplete phenotype for cystic fibrosis, indicating probable cystic fibrosis without lung involvement, dating from approximately 1980. (TR 290, 298, 300, 683). In February 1992, Plaintiff underwent an EKG secondary to mitral valve prolapse. (TR 672). The EKG report states that Plaintiff had normal chamber dimensions, normal left ventricular systolic function, and mitral valve prolapse with trivial regurgitation. A medical report dated July 30, 1997 states that Plaintiff had a

history of severe migraines, panic attacks, and mitral valve prolapse. (TR 764-65). In December 1997 Plaintiff presented to the hospital emergency room with complaints of epigastric and right abdominal pain. (TR 783). An ultrasound of the gallbladder revealed cholelithiasis but otherwise a normal abdomen. (TR 784-86). In September 1998 Plaintiff underwent a CT scan of the head due to cephalalgia (headaches), which was normal. (TR 757).

The record contains a significant amount of medical evidence relating to Plaintiff's treatment after her date last insured. Evidence of the claimant's medical condition after the date last insured must be considered to the extent it reflects upon the claimant's health before that date. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The Court has reviewed the record in its entirety and will very briefly discuss certain portions of the medical evidence dated after September 30, 1999. In 2008 Plaintiff was documented to have cystic fibrosis, pancreatitis with chronic pain syndrome, malnutrition, migraine headaches, mild to moderate mitral valve prolapse, status post device closure of atrial septal defect in September 2000, and depression. (TR 264, 267, 289, 604, 607-08). In October 2000, Plaintiff reported that her migraine headaches had recently worsened, were now associated with visual disturbances, and lasted for as long as forty-five minutes. (TR 607). The medical report describes this as a change in both the frequency and severity of Plaintiff's migraines that began after the repair of Plaintiff's atrial septal defect in September 2000. The report describes Plaintiff as a well-nourished individual with no exercise intolerance. (TR 607). A medical note dated January 2008 states that Plaintiff was able to manage her pain with medications, manage to perform her activities of daily living, and even vacation in Paris. (TR 298).

On March 22, 2010 Dr. Eric Clark completed a Treating Physician Medical Questionnaire at the request of Plaintiff's counsel. (TR 623-25). Dr. Clark stated that he saw Plaintiff once

4

monthly for pain management, anxiety, and fibromyalgia, and claimed that Plaintiff had "symptoms ever since starting as [his] patient ten years ago." (TR 623). He documented that Plaintiff had fifty percent of her pancreas working, a positive sweat test for cystic fibrosis, mitral valve prolapse, chronic progressive pancreatitis, chronic vomiting, and fibromyalgia. (TR 623). The record shows that the positive sweat test for cystic fibrosis was obtained in May 2005. (TR 626). Dr. Clark wrote that Plaintiff must lie down most of the day, and reported that she was limited to standing no more than ten minutes at a time, sitting fifteen minutes at a time, walking less than one block without stopping, limited to lifting and carrying up to five pounds frequently, with limited grasping, fine hand manipulation, push/pull, twisting/turning, bending, squatting, kneeling, climbing, and balancing. (TR 624).

On July 19, 2010, several weeks after the ALJ issued his decision denying benefits, Plaintiff's counsel submitted to the Appeals Council a supplement to the Treating Physician Medical Questionnaire written by Dr. Clark. In the supplement, Dr. Clark states that he has been Plaintiff's physician since August 1999 and reports that his medical records for her treatment "during this period" have been destroyed. Dr. Clark states that Plaintiff suffered from cystic fibrosis which manifested itself in digestive illness and dysfunction. (TR 946). He opines that Plaintiff was not able to care for herself or handle regular activities of daily living. He states that although Plaintiff has had significant deterioration over time, her symptoms of severe abdominal pain, vomiting, diarrhea, severe fatigue, anxiety, and sleeplessness were present when she first began treating in his office and were disabling.

**IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff did not engage in substantial gainful activity from

January 1, 1999, her alleged disability onset date, through her date last insured of September 30, 1999, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable severe impairment prior to her date last insured. (TR 19). Consequently, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act from January 1, 1999 through September 30, 1999.

## V.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Defendant moves for summary judgment on the ground that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. At step two of the five step sequential analysis Plaintiff was required to show that she suffered from one or more severe impairments prior to September 30, 1999, her date last insured. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. A claimant

cannot establish a severe impairment by subjective statements alone. *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 498 (6th Cir. 2006). Rather, "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508. In other words, "the claimant must substantiate the symptoms by objective clinical or lab findings." *Kornecky v. Comm'r*, 167 Fed. Appx. at 498 (citation omitted). In cases in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step two of the sequential analysis. SSR 96-4p, 1996 WL 374187, at *2.

The undersigned has thoroughly reviewed the evidence of record and suggests that the decision of the ALJ is supported by the substantial evidence. While the record shows that Plaintiff had chronic pancreatitis, probable cystic fibrosis, mitral valve prolapse, migraines, panic attacks, and gallstones prior to her date last insured, the evidence does not show that Plaintiff was functionally limited in her ability to do basic work activities prior to September 30, 1999, or indicate that her physicians restricted her activities during that time because of her impairments. *See e.g., Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987).

The ALJ observed that Plaintiff alleged disability due to cystic fibrosis, mitral valve prolapse, and pancreatitis. He then noted that medical reports documented that Plaintiff had no nausea, vomiting, or diarrhea after her January 1998 cholecystectomy. He observed that an October 2004 ER admission note reported that Plaintiff had no problems between her cholecystectomy and the ER admission. The ALJ found no evidence to show that Plaintiff's impairments prevented her from engaging in typical daily and social activities. He also found that the evidence did not suggest that Plaintiff treated with a physician on a regular basis prior to her date last insured. The ALJ

concluded that the evidence showed that Plaintiff's disabling symptoms did not begin until 2004-2005. The Court should find that the ALJ's determination is based on substantial evidence in the record and should not be disturbed. Additionally, the Court should find that a sentence six remand is not warranted because Plaintiff did not establish good cause for failing to submit Dr. Clark's supplement to the Treating Physician Medical Questionnaire in time for it to be considered by the ALJ. *See Hollon v. Comm'r*, 447 F.3d 477, 483 (6th Cir. 2006) (a sentence six remand is authorized when there is new and material evidence that for good cause was not previously presented to the Commissioner). Accordingly, Defendant's motion for summary judgment should be granted.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 6, 2012
        s/ Mona K. Majzoub
        MONA K. MAJZOUB
        UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Cheryl Lynn Bradford-Allen and Counsel of Record on this date.

Dated: August 6, 2012
        s/ Lisa C. Bartlett
        Case Manager